**In re CRUISEPHONE, INC., Debtor.**

**Cruisephone, Inc., and the Official Committee of Unsecured Creditors of Cruisephone, Inc., Plaintiffs,**

**v.**

**Cruise Ships Catering and Services N.V., Defendant.**

**Bankruptcy No. 199–24276–353.
Adversary No. 101–1560–353.**

United States Bankruptcy Court,
E.D. New York.

May 28, 2002.

RubinBaum LLP, by Paul H. Aloe, New York City, for Debtor.

Swidler Berlin Shereff & Friedman, LLP, by Shalom Jacob, New York City, for Official Committee of Unsecured Creditors.

Wormser, Kiely, Galef & Jacobs, by Jeffrey Hill, New York City, for Cruise Ships Catering and Services International N.V.

Sharil A. DaCosta, New York City, Office of the United States Trustee.

### DECISION AND ORDER ON MOTION TO DISMISS

JEROME FELLER, Bankruptcy Judge.

Before the Court is a motion of Cruise Ships Catering and International Services N.V., Defendant in the above-captioned adversary proceeding ("CSCS"), to dismiss a complaint filed jointly by CruisePhone, Inc., ("Debtor") and the Official Committee of Unsecured Creditors of CruisePhone, Inc ("Committee") (hereinafter collectively referred to as "Plaintiffs"). The asserted grounds for dismissal are lack of personal jurisdiction and insufficiency of service of process. The motion is made pursuant to Fed.R.Civ.P. 12(b)(2) ("Rule 12(b)(2)") and Fed R. Civ. P. 12(b)(5) ("Rule 12(b)(5)"), made applicable hereto by Fed. R. Bankr.P. 7012. For the reasons hereinafter set forth, the motion to dismiss is granted, unless Plaintiffs file an amended complaint alleging a predicate or predicates for personal jurisdiction over CSCS. If Plaintiffs file an amended complaint, leave is granted to effect proper service in accordance with provisions in the federal rules for service in a foreign country.

### I. BACKGROUND

The Debtor filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on November 30, 1999. The reorganization effort failed and on May 4, 2000 the Debtor was authorized to sell substantially all of its assets. Prior thereto, the Debtor was engaged in the business of providing ship-to-shore and shore-to-ship telecommunication services to vessels, primarily cruise ships, at sea. The Debtor was the exclusive provider of, among other things, Inmarsat satellite telecommunications to CSCS for covered cruise ship vessels pursuant to a Communications Service Agreement, entered into on December 21, 1994, and as amended and supplemented from time to time thereafter ("CSCS Service Agreement"). CSCS was a large and important customer of the Debtor, supplying a significant portion of the Debtor's overall revenue. The Debtor advises that for the calendar year 1998 and for the nine (9) months ended September 30, 1999, the CSCS Service Agreement provided general gross revenues of $1,138,766 and almost $900,000, respectively.

On November 29, 2001, this adversary proceeding was commenced by the Plaintiffs against CSCS, seeking payment of unpaid service fees and substantial damages for, *inter alia*, breach of contract, tortious interference with the Debtor's contractual rights, conversion and violations of the automatic stay. Plaintiffs have charged CSCS as being a principal cause of the Debtor's failed reorganization effort. On January 2, 2002, in lieu of filing an answer, CSCS filed the instant motion to dismiss.

The initiation of the adversary proceeding was not *in vacuo*. It was preceded by various steps of the parties. On or about June 29, 2000, the Debtor obtained an order authorizing the rejection of certain executory contracts pursuant to 11 U.S.C. § 365(a) and fixing the time for the filing of proofs of claim arising out of such exec-

utory contract rejections. The CSCS Service Agreement was one of the executory contracts rejected by the Debtor pursuant to this order. On August 3, 2000, CSCS filed a general unsecured claim in an unliquidated amount ("Proof of Claim"). CSCS asserted entitlement to damages for breach of contract in an amount to be determined as a result of i) rejection of the CSCS Service Agreement and ii) failure of the Debtor to adequately perform under the CSCS Service Agreement. Plaintiffs jointly applied on August 30, 2000 for an order allowing discovery under Fed. R. Bankr.P. 2004, stating that such discovery was necessary to ascertain the validity of the Proof of Claim and to determine whether causes of action might exist against CSCS. On September 18, 2000, the Court signed an order requiring CSCS to produce documents responsive to a document request and to designate a witness for deposition ("2004 Order"). By letter to the Clerk of the Court, dated November 28, 2000, CSCS withdrew its Proof of Claim. Plaintiffs, with the Committee taking the lead, protested the withdrawal of the Proof of Claim, contending that under Fed. R. Bankr.P. 3006 ("Bankruptcy Rule 3006") the Proof of Claim could not be withdrawn absent an order of the Court obtained after notice and a hearing.

CSCS failed to comply with the 2004 Order and Plaintiffs jointly moved on May 31, 2001 for an order compelling production of documents. The motion to compel was granted by order dated June 12, 2001. On June 28, 2001, refusing to recognize CSCS's withdrawal of its Proof of Claim, Plaintiffs filed a joint motion for liquidation of the Proof of Claim, wherein they contended that the Proof of Claim should be valued at $0.00. As indicated above, on November 29, 2001, the instant adversary proceeding was commenced by the Debtor and the Committee against CSCS. The sole predicate alleged in the complaint as the basis for personal jurisdiction over CSCS, a foreign corporation, was the Proof of Claim filed by CSCS on August 3, 2000. The summons and complaint was hand delivered to CSCS's counsel, Wormser, Kiely, Galef & Jacob at their offices in New York City.

## II.   *PERSONAL JURISDICTION OVER CSCS*

CSCS is a corporation organized under the laws of the Netherland Antilles and based in Monaco. CSCS says that it never owned any of the vessels covered by the CSCS Service Agreement and that Plaintiffs confuse CSCS with another company, Costa Cruise Lines N.V. ("Costa"). According to CSCS, all of the ships are owned by Costa's parent company, Costa Crociere S.p.A. and CSCS is the general concessionaire for onboard services for the Costa cruise ship fleet. Alberto Sacconaghi, the Managing Director of CSCS since November 1992, has submitted a declaration, dated December 24, 2001, stating that CSCS has never transacted business in the State of New York or anywhere in the United States, and has never contracted to supply goods or services in the State of New York or anywhere in the United States. In sum, CSCS believes that it is a foreign corporation outside the jurisdiction of this Court and moves to dismiss pursuant to Rule 12(b)(2), which provides for dismissal of a complaint for "lack of jurisdiction over the person".

Plaintiffs contend that CSCS is amenable to the personal jurisdiction of this Court in light of the Proof of Claim it filed or because CSCS had sufficient minimum contacts with the United States.

### A.   *THE PROOF OF CLAIM*

Plaintiffs argue that CSCS voluntarily subjected itself to the personal

jurisdiction of this Court through the filing of a Proof of Claim on August 3, 2000. Without a doubt as an abstract proposition, Plaintiffs are correct. The filing of a proof of claim by a creditor is not merely a means of providing information to the bankruptcy court, but is a submission to the bankruptcy court's jurisdiction to establish that creditor's right to participate in the distribution of the bankruptcy estate. By filing a claim against the estate, a creditor triggers the process of allowance and disallowance of claims and an adversary proceeding seeking recovery against the creditor becomes part of that claims allowance process. *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). CSCS responds that its Proof of Claim was withdrawn as of right and hence is irrelevant. On the other hand, Plaintiffs argue that CSCS's unilateral withdrawal of its Proof of Claim was ineffective.

The withdrawal of proofs of claim in bankruptcy cases is governed by Bankruptcy Rule 3006. In pertinent part, Bankruptcy Rule 3006 provides as follows:

> A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule. If after a creditor has filed a proof of claim an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding, or the creditor has accepted or rejected the plan or otherwise has participated significantly in the case, the creditor may not withdraw the claim except on order of the court after a hearing on notice . . . .

In the bankruptcy context, a proof of claim filed by a creditor is conceptually analogous to a civil complaint, an objection to the claim is akin to an answer or defense and an adversary proceeding initiated against the creditor that filed the proof of claim is like a counterclaim. Bankruptcy Rule 3006 is derived from Fed.R.Civ.P. 41(a) ("Rule 41(a)") governing voluntary dismissal of civil actions in federal courts. In dividing voluntary dismissal into two categories, "By Plaintiff" (Rule 41(a)(1)) and "By Order of Court" (Rule 41(a)(2)), the rule facilitates a plaintiff's ability to voluntarily dismiss an action, while at the same time gives recognition to the need of fixing the point at which the court and the defendant are so committed that dismissal can no longer be had as of right and judicial permission is required. In the world of bankruptcy and proofs of claim, Bankruptcy Rule 3006 serves a similar purpose.

■ The plain language of Bankruptcy Rule 3006 establishes bright-line tests marking the termination of a creditor's otherwise unfettered right voluntarily and unilaterally to withdraw a proof of claim. A creditor must obtain an order of a court to withdraw a proof of claim, after notice and a hearing, only if i) an objection to the claim was filed, or ii) a complaint was filed against the creditor in an adversary proceeding, or iii) the creditor accepted or rejected the plan, or iv) otherwise participated significantly in the case.

■ In order to trigger the requirement of judicial approval, an objection to a proof of claim or initiation of an adversary proceeding must precede proof of claim withdrawal. Here, Plaintiffs objected to the Proof of Claim seven months after its withdrawal by CSCS and commenced this adversary proceeding more than 1 year after withdrawal of the Proof of Claim. Voting on a plan of reorganization is not germane in that a plan has not been promulgated in this Chapter 11 case. The only possible issue regarding the efficacy of CSCS's withdrawal of the Proof of Claim is wheth-

er or not it "otherwise has participated significantly in the case."

■ The parties have not cited any case law helpful in the construction of this phrase and the Court's independent research has not uncovered any as well. Nor are the Advisory Committee Notes underlying Bankruptcy Rule 3006 illuminative. It seems to this Court that the phrase "otherwise has participated significantly in the case" necessarily implicates a creditor that enters a bankruptcy case and asks the court to act on its behalf in some substantive way. CSCS has never filed a notice of appearance in this Chapter 11 case. Prior to its November 28, 2000 withdrawal of the Proof of Claim, CSCS did monitor the Debtor's Chapter 11 case, apparently with some degree of vigilance and care. However, CSCS had not filed any motions, had not raised any objections and had not even made any court appearances and accordingly, in our view, had not "otherwise participated significantly in the case" within the meaning of Rule 3006. Post-petition business dealings outside the purview of the bankruptcy court or settlement discussions between CSCS and the Debtor do not impact upon the right to withdraw the Proof of Claim. Nor does involvement by CSCS relating to compliance with the 2004 Order obtained by Plaintiffs constitute significant participation in the case contemplated by Bankruptcy Rule 3006.

### B. *MINIMUM CONTACTS*

■ The filing of a proof of claim is certainly not the only basis upon which a bankruptcy court can exercise personal jurisdiction over a foreign entity. Like any other federal court, whether a bankruptcy court can exercise jurisdiction depends upon whether the foreign defendant has the requisite minimum contacts with the United States at large. *See Lykes Bros. Steamship Co., Inc. v. Hanseatic Marine Service (In re Lykes Bros. Steamship Co., Inc.)*, 207 B.R. 282, 285 (Bankr. M.D.Fla.1997); *see also Goodson v. Rowland (In re Pintlar Corp.)*, 133 F.3d 1141, 1144 (9th Cir.1998), *cert. denied* 524 U.S. 933, 118 S.Ct. 2334, 141 L.Ed.2d 706 (1998); Fed. R. Bankr P. 7004(f). A minimum contacts analysis is used to determine whether the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice." *See Asahi Metal Indus. Co., Ltd., v. Superior Court of California*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (Citation Omitted). The Second Circuit has intimated three types of actions by which a foreign corporation may satisfy the minimum contacts requirement:

1) transacting business in the United States;

2) doing an act in the United States; or

3) having an effect in the United States by an act done elsewhere.

*See Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2d Cir. 1972); *see also Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F.Supp. 81, 87 (S.D.N.Y.1995) ("personal jurisdiction may be asserted by courts where a foreign corporation, through an act performed elsewhere, causes an effect in the United States").

■ The sole foundation for personal jurisdiction alleged in the complaint is the Proof of Claim filed by CSCS. As shown above, the Proof of Claim was effectively withdrawn and accordingly the complaint is subject to dismissal. However, Plaintiffs claim an alternative basis for personal jurisdiction i.e., ample contacts with this forum. Remarkably, absent any pleadings and no evidence other than a terse, conclusory affidavit of the Managing Director of CSCS, who has never been examined by Plaintiffs, the parties argue vigorously.

CSCS contends that not only has it never had minimum contacts with the United States, but it has had no contacts. On the other hand, Plaintiffs assert that CSCS has had more than sufficient contacts with the United States. Counsel for both sides reject the statements of the other and make factual representations in support of their clients' respective positions.

Absent pleadings and an adequate evidentiary record, we are unable to make the factual findings underlying a minimum contacts analysis. As a first step to the adjudication of this dispute over personal jurisdiction, Plaintiffs are to be afforded an opportunity to amend the complaint to allege the basis or bases, if any, for the personal jurisdiction of this Court over CSCS. *See* Fed.R.Civ.P. 15(a), made applicable hereto by Fed. R. Bankr.P. 7015("leave [to amend pleadings] shall be freely given when justice so requires").

### III. *SUFFICIENCY OF SERVICE OF PROCESS*

■■■■ As a preliminary matter and in the hope of clarifying some confusion arising from the papers filed by the parties, we would point out the distinction between personal jurisdiction and sufficiency of process. Fed.R.Civ.P. 12(b) lists separately the defenses of personal jurisdiction and insufficiency of process and thereby indicates that these defenses, while often related, are not identical. Questions of personal jurisdiction go to the right of a court to exercise judicial power over a defendant, whereas questions of sufficiency of process concern the manner in which service has been made and not the court's power to adjudicate a defendant's rights and liabilities. *Santos v. State Farm Fire and Cas. Co.*, 902 F.2d 1092, 1095 (2d Cir.1990) (Citation Omitted). In short, service of process is the vehicle through which a court can properly exercise its

adjudicatory power over an individual or entity in a particular case.

On December 5, 2001, Plaintiffs caused to be hand-delivered a copy of the summons and complaint in this adversary proceeding to the New York City offices of Wormser, Kiely, Galet & Jacobs LLP, counsel for CSCS ("Wormser firm"). On that same date, Jeffrey A. Hill, Esq., wrote to Committee counsel, on behalf of the Wormser firm, stating that "[t]his firm is not (and has never been) authorized to accept service of process on behalf of Cruise Ships Catering and Services International N.V." CSCS now moves to dismiss the complaint pursuant to Rule 12(b)(5) for "insufficiency of service of process".

Fed. R. Bankr.P. 7004 ("Bankruptcy Rule 7004") governs the service of a summons and complaint in bankruptcy adversary proceedings and provides that service may be made upon a domestic or foreign corporation "by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process". Bankruptcy Rule 7004(b)(3).

■■■ Plaintiffs argue that CSCS expressly designated the Wormser firm as its authorized agent for service of process when CSCS listed the Wormser firm as the party to receive notice at the law firm's New York City address in the Proof of Claim filed by CSCS. There is ample authority for the proposition that service of process to the address designated in a proof of claim constitutes proper service under Bankruptcy Rule 7004(b)(3). *Ms. Interpret v. Rawe Druck–Und–Veredlungs–Gmbh (In re Ms. Interpret)*, 222 B.R. 409, 415 (Bankr.S.D.N.Y.1998); *In re Village Craftsman, Inc.*, 160 B.R. 740, 745 (Bankr.D.N.J.1993); *In re Outlet Dep't Stores, Inc.*, 49 B.R. 536, 540 (1985). Here, however, the argument is unavailing

because CSCS withdrew its Proof of Claim as of right under Bankruptcy Rule 3006, long before the initiation of this adversary proceeding.

■ Plaintiffs counter with the argument that even if the Proof of Claim was effectively withdrawn, the designation of the Wormser firm as the appropriate entity to receive notices on behalf of CSCS contained in that Proof of Claim was never revoked and remains viable. Plaintiffs cite no authority for this novel argument and our independent research has uncovered no support for such a notion. On the contrary it seems reasonably clear and makes eminent sense that, upon the successful withdrawal of a proof of claim pursuant to Bankruptcy Rule 3006, the withdrawn proof of claim is a legal nullity and the parties are left as if the claim has never been filed. *See Smith v. Dowden,* 47 F.3d 940, 943 (8th Cir.1995); *In re 20/20 Sport, Inc.,* 200 B.R. 972, 976 (Bankr. S.D.N.Y.1996). Stated otherwise, upon withdrawal of the Proof of Claim by CSCS, the Proof of Claim is *in toto* nonexistent, including the designation of the Wormser firm as an entity to receive notice in the bankruptcy case.

Plaintiffs further contend that even if CSCS did not expressly appoint the Wormser firm as its authorized agent for service of process through the Proof of Claim, CSCS impliedly did so because of the Wormser's involvement in the Chapter 11 case on behalf CSCS.

■ An agent's authority to accept process on a corporation's behalf may be explicit or implicit. The phrase "agent authorized by appointment" contained in Bankruptcy Rule 7004(b)(3) means an agent that is either expressly or impliedly appointed by the corporation to accept service on its behalf. *See Reisman v. First New York Bank For Business (In re Reisman),* 139 B.R. 797, 800 (Bankr.S.D.N.Y. 1992). However, courts have been reluctant to lightly infer an implied agency. *Olympus Corp. v. Dealer Sales & Service, Inc.,* 107 F.R.D. 300, 305 (E.D.N.Y.1985). As one bankruptcy court cogently observed:

> To find an implied agency, courts look at all the circumstances under which the defendant appointed the attorney to measure the extent of the authority that the client intended to confer. If the purported agent's activities in the forum are substantial and involve the significant exercise of independent judgment and discretion, service on the agent is valid even in the absence of express authorization to accept process.

*In re Ms. Interpret,* 222 B.R. 409, 416.

■ The activities of the Wormser firm in the Chapter 11 case cited by Plaintiffs as the basis for an implied agency represent little more than communications and correspondence written by the Wormser firm as counsel to CSCS.[1] There is no indication from these activities that they were substantial and involved the significant exercise of independent judgment and discretion. In sum, Plaintiffs have shown no basis for an inference that CSCS had authorized the Wormser firm to accept service of process on its behalf.[2] An attorney does not become his client's agent for service of process solely by reason of serving in the capacity as attorney. *Nisselson v. Roussopoulos (In re Roussopoulos),* 198 B.R. 33, 39 (Bankr.E.D.N.Y.1996); *United States v. Bosurgi,* 343 F.Supp. 815, 817–18 (S.D.N.Y.1972).

---

1. Affidavit of Paul H. Aloe, Esq., sworn to January 16, 2002, filed in opposition to motion to dismiss at ¶ 6.

2. We would note that the CSCS Service Agreement, the very document upon which this adversary proceeding revolves, provides that all notices or communications are required to be given to CSCS in Monaco.

Finally, Plaintiffs argue that there was sufficiency of service of process because it provided CSCS with adequate and timely notice of the adversary proceeding. This argument is misplaced. Notice cannot by itself validate an otherwise defective service. Service of process is a separate prerequisite to obtaining jurisdiction over a party, one that is independent of due process considerations. *See Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 492 (3rd Cir.1993); *Mid-Continent Wood Prod., Inc. v. Harris,* 936 F.2d 297, 300–01 (7th Cir.1991); *Echevarria-Gonzalez v. Gonzalez-Chapel,* 849 F.2d 24, 28 (1st Cir.1988). A bankruptcy court's power to adjudicate the rights and liabilities of a defendant is dependent not only on compliance with due process, but also on compliance with the technicalities of Bankruptcy Rule 7004. In this adversary proceeding, service of process on the Wormser firm, a law firm not authorized to accept service for its client is ineffective under Bankruptcy Rule 7004(b)(3).

## IV. *CONCLUSION*

Based on all of the foregoing, the motion of CSCS to dismiss is granted, unless Plaintiffs file an amended complaint alleging the minimal contacts underlying the exercise of personal jurisdiction over CSCS on or before twenty (20) days from entry of this order. If plaintiffs file an amended complaint, leave is granted to effect proper service upon a person authorized to receive service under Bankruptcy Rule 7004(b)(3) in accordance with Fed. R.Civ.P. 4(f), made applicable hereto by Bankruptcy Rule 7004(a).

IT IS SO ORDERED.